## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MICHAEL ARCHULETA, et al.,**

        **Plaintiffs,**

**vs.**                                   **Civ. No.  11-510 JH/ACT**

**CITY OF ALBUQUERQUE,**
**NEW MEXICO, et al.,**

        **Defendants.**

### MEMORANDUM OPINION AND ORDER OF REMAND

This matter is before the Court on *Plaintiffs' Expedited Motion to Remand* [Doc. No. 8], filed June 13, 2011.  After considering the briefs submitted by counsel, the state court record, and the applicable legal authorities, the Court concludes that the motion to remand should be granted.

### FACTUAL BACKGROUND

Plaintiffs, who are registered voters within the City of Albuquerque, originally filed this case in the Second Judicial District Court, County of Bernalillo, New Mexico, on June 6, 2011. In their complaint, Plaintiffs allege that the 2010 federal census data establishes that the current Albuquerque city counsel districts are grossly malapportioned, with some districts being underpopulated, and others being overpopulated.  Plaintiffs reside in districts which they allege are overpopulated, and they contend that this unconstitutionally dilutes their votes.   Plaintiffs further allege that despite their knowledge that the current districts are grossly unequal in population size, the Defendants intend to use those same districts in the upcoming October, 2011 election for Albuquerque City Council. Accordingly, they bring two claims.  First, they request that the court declare that the current city council districts violate their rights to equal protection under the New

Mexico and United States constitutions, as well as the City of Albuquerque's Charter. Second, Plaintiffs ask the court to enjoin the Defendants from conducting the upcoming city council elections with the current districts, ordering them to immediately draw new district boundaries in conformity with principles of equal protection, or in the alternative, for the court to do so. In addition to their complaint, Plaintiffs filed a motion for preliminary injunction.

After the Plaintiffs filed their complaint, the state district court immediately met with counsel, denied Defendants' request for a 30-day period in which to answer the complaint, and set an emergency hearing on the Plaintiffs' motion for preliminary hearing that was scheduled to take place on June 16, 2011, a mere ten days after the filing of the complaint. However, that hearing never occurred because on June 13, 2011, the Defendants removed the case to this United States District Court. Defendants removed the case on the grounds that Plaintiffs' constitutional claim in Count I presents a federal question under 28 U.S.C. § 1331.

## DISCUSSION

There is no dispute that this Court has jurisdiction to hear the case, as it clearly presents a federal question under Section 1331. Rather, the issue before this federal district court is whether or not to remand the case to the state district court based upon principles of comity as outlined by the Supreme Court in *Growe v. Emison*, 507 U.S. 25 (1993). In *Growe*, a group of Minnesota voters filed a state-court action against the Minnesota Secretary of State and other election officials. Shortly thereafter, another group of Minnesota voters filed a similar action against essentially the same officials in federal district court. Both lawsuits alleged that, in light of the 1990 census results, the State's congressional and legislative districts were malapportioned in violation of the federal and state Constitutions. The federal lawsuit contained the additional claim that the current districts diluted the vote of minority groups in Minneapolis in violation of § 2 of the Voting Rights Act of

1965.  Both lawsuits sought a declaration that the current districts were unlawful, as well as judicial

construction of new districts if the state legislature failed to act.  After the state legislature adopted

a new legislative districting plan, which contained numerous drafting errors, a second federal action

was filed raising constitutional challenges to the new legislative districts, and the two federal

lawsuits were consolidated. The federal district court set a deadline for the legislature to act on

redistricting plans but refused to abstain or defer to the state-court proceedings. The state court,

having found the new legislative districts defective because of the drafting errors, issued a

preliminary legislative redistricting plan correcting most of those errors, to be held in abeyance

pending further action by the legislature. But before the state court could take additional action, the

federal district court stayed the state-court proceedings. When the Minnesota governor vetoed the

legislature's effort to correct the defective legislative redistricting plan and to adopt new

congressional districts, the state court issued a final order adopting its legislative plan and held

hearings on the congressional plans submitted by the parties. Before the state court could issue a

congressional plan, however, the federal district court adopted its own redistricting plans, both

legislative and congressional, and permanently enjoined interference with state implementation of

those plans.

The Supreme Court held that the federal district court had erred in not deferring to the state

court's timely efforts to redraw the legislative and congressional districts. *Growe*, 507 U.S. at 34.

The Court recognized that "the Constitution leaves with the States primary responsibility for

apportionment of their federal congressional  and state legislative districts." *Id*.  In the absence of

evidence that state legislative or judicial branches of government will fail to perform that duty in

a timely fashion, "a federal court must neither affirmatively obstruct state reapportionment nor

permit federal litigation to be used to impede it." *Id*.  The Court emphasized that the state judicial

branch's redistricting efforts are entitled to the same deference as those of the legislative branch, id.,

and that where the record does not demonstrate that the state court was either unwilling or unable

to adopt a timely redistricting plan, the federal court must stay its hand.  *Id*. at 36-37.

In so ruling, the Court relied heavily on its decision in *Scott v. Germano*, 381 U.S. 407

(1965), which the *Growe* court described as "requir[ing] federal judge to defer consideration of

disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun

to address that highly political task itself."  *Growe*, 507 U.S. at 33 (emphasis in original). In

*Germano,* the federal district court invalidated Illinois state senate districts and entered an order

requiring the state to submit to it any revised districting scheme it might adopt.  The federal court

did so despite the pendency of a state court lawsuit and a ruling by the state supreme court holding

that the current redistricting scheme was invalid but retaining jurisdiction to ensure that the

upcoming election would be conducted under a constitutionally valid plan.  The Supreme Court held

that the federal district court should have "stayed its hand," as "[t]he power of the judiciary of a

State to require valid reapportionment or to formulate a valid redistricting plan has not only been

recognized by this Court but appropriate action by the States in such cases has been specifically

encouraged."  *Germano*, 381 U.S. at 409.

The Defendants argue that the principles outlined in *Growe* and *Germano* do not apply in

this case such that remand is not required.  First, they contend that there is no parallel state

proceeding with which this court could interfere.  Defendants ignore the fact that there is no state

proceeding because they removed it to this court.  That fact does nothing to alter the policy, clearly

set forth in *Growe* and *Germano*, that the state judicial and legislative bodies should have the first

opportunity to address the issue of redistricting before a federal court becomes involved in the

process.  If the absence of a parallel action in state court were determinative, as Defendants argue,

then one could always prevent the state judicial branch from acting in a redistricting case by the procedural expedient of removal.  As the Supreme Court directed in *Growe*, a federal court should never allow federal litigation to impede state action in cases such as these.  507 U.S. at 34. Defendants complain that there is no authority suggesting that *Growe* could be applied to require remand of a removed state court redistricting case.  Essentially, they suggest that the procedural differences between this case and the situation in *Growe* demand a different result.  However, Defendants have failed to present authority to the contrary, and regardless of the procedural posture of the case, the fundamental principles of *Growe* require remand here.

Next, Defendants attempt to distinguish *Growe* and *Germano* on the grounds that the city council has refused to redistrict before the October 2011 election, and the state district court has not yet embarked on redistricting.  Therefore, Defendants reason, redistricting is not yet "in process," and there is no reason to defer to the state district court.  Again, this Court disagrees with Defendants' interpretation of the caselaw.  In *Germano*, the state supreme court had declared a redistricting scheme to be invalid but had  expressed confidence that the state legislature would enact a constitutional plan.  When the federal court improperly interfered with this process, the Supreme Court stated , "[t]he power of the judiciary of a State to require valid reapportionment" is not only recognized, but also encouraged.  381 U.S. at 409.  Thus, the state courts must have the unfettered power not only to conduct redistricting, but also to require it from the judicial branch—an act that cannot be done unless the state court is first allowed the opportunity to consider whether redistricting is necessary.  Similarly, the reasoning in *Growe* was based upon the principle of deference to state legislative and judicial bodies in the redistricting process.  "We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislative or other body, rather than of a federal court."  *Growe*, 507 U.S. at

34 (quoting *Chapman v. Meier*, 420 U.S. 1, 27, 95 S.Ct. 751, 766 (1975)). Implicit in that deference

is the need to give the state district court the opportunity to <u>consider</u> and, if necessary, conduct

redistricting—an opportunity that the state court cannot have if the case is removed before it can

take substantive action. Here, in their complaint the Plaintiffs have asked the court either to order

Defendants to conduct redistricting or to implement its own redistricting plan. If Defendants are

permitted to remove redistricting cases to federal court before the state court even has the

opportunity to consider the matter, then the policy of deference set forth in *Germano* and *Growe* has

little practical meaning. Once more, the Court finds guidance in the language of the Supreme Court,

which has stated that the federal courts must defer to the state judiciary unless the record contains

evidence that the state court cannot or will not act in a timely manner. *Growe*, 507 U.S. at 34, 37.

There certainly is no such evidence in the record before this Court.

For the foregoing reasons, the Court concludes that it should stay its hand and remand the

case to the state district court. Accordingly,

**IT IS HEREBY ORDERED** that *Plaintiffs' Expedited Motion to Remand* [Doc. No. 8] is

**GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this case is

**REMANDED** to the Second Judicial District Court, Bernalillo County, New Mexico.


_____
**UNITED STATES DISTRICT JUDGE**